277 P.3d 216

**BMO HARRIS BANK NATIONAL ASSOCIATION, et al.,**
**Petitioner,**

**v.**

**The Honorable Michael R. BLUFF, Judge of the Superior Court of the State of Arizona, in and for the COUNTY OF YAVAPAI, Respondent Judge,**

**Brian Myers, a married man dealing with his sole and separate property, Real Party in Interest.**

**No. 1 CA–SA 12–0067.**

Court of Appeals of Arizona, Division 1, Department A.

May 3, 2012.

---

* Judge Daniel A. Barker was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective December 31, 2011. In accordance with the authority granted by Article 4, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12–145 (West 2011), the Chief Justice of the Arizona Supreme Court has designated Judge Barker as a judge pro tempore in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

Stinson Morrison Hecker LLP By Jeffrey J. Goulder, Stefan M. Palys, Phoenix, Attorneys for Petitioner.

Barbara J. Forde, PLC By Barbara J. Forde, Scottsdale, Attorneys for Real Party in Interest.

## OPINION

TIMMER, Judge.

¶ 1 BMO Harris Bank National Association ("BMO") files this special action asserting the trial court abused its discretion by holding BMO in civil contempt of a stay order entered pending an appeal. We are asked to decide whether a court can find a party in contempt of a court order for expressing its intention to violate that order in the future. For the reasons that follow, we accept jurisdiction and hold the court lacks such authority. We grant relief to BMO by vacating the court's contempt orders.

## BACKGROUND

¶ 2 Real-party-in-interest Brian Myers initiated this lawsuit to prevent BMO from proceeding with trustee's sales of four parcels of property owned by him in Sedona. The court issued a temporary restraining order ("TRO") on February 22, 2011 stopping the sales. Myers sought a preliminary injunction based on alleged deficiencies in the foreclosure documents, but the court denied the request, and the TRO expired. At Myers' request, the court reinstated the TRO pending appeal of the denial of the preliminary injunction request, as long as he filed a notice of appeal within ten days and posted a supersedeas bond. Myers did so.

¶ 3 While the appeal was pending, BMO canceled the original notices of trustee's sales and issued new ones that purportedly cured the alleged deficiencies in the original notices. Myers applied to the trial court for an order of contempt and sanctions, asserting BMO violated the reinstated TRO by issuing new notices of trustee's sales. The court agreed, finding "[BMO's] action in re-noticing the Trustee's Sale ... to be in direct willful violation of this Court's February 22, 2011 order and the stay on appeal." As a sanction, the court awarded attorneys' fees

and costs incurred by Myers in the contempt proceedings upon his submission of appropriate documentation. Finally, the court explicitly clarified that the reinstated TRO precluded all trustee's sales of Myers' property, including the ones newly scheduled by BMO.

¶ 4 While the contempt proceedings were pending in the trial court, this court, on BMO's motion, dismissed the appeal as moot in light of the cancellation of the original notices of trustee's sales. Thereafter, the trial court ordered BMO to pay $5,650 in fees and costs to Myers as a sanction for contempt. This special action followed.[1]

## DISCUSSION

¶ 5 An order holding a party in contempt for refusing to obey a court order is not appealable and may only be reviewed through a special action. *Stoddard v. Donahoe*, 224 Ariz. 152, 154, ¶ 7, 228 P.3d 144, 146 (App.2010). Because BMO presents a meritorious issue and does not have a remedy by appeal, in the exercise of our discretion, we accept jurisdiction over the petition. Ariz. R.P. Spec. Act. 1(a).

¶ 6 The trial court possessed power to find BMO in civil contempt [2] if BMO disobeyed a court order directing a lawful act. *Ong Hing v. Thurston*, 101 Ariz. 92, 98, 416 P.2d 416, 422 (1966); Ariz. Rev. Stat. ("A.R.S.") § 12–864 (West 2012).[3] To prevail in his request for a contempt order, Myers bore the burden of showing by clear and convincing evidence that BMO " 'violated a specific and definite order of the court.' " *Fed. Trade Comm'n v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir.1999) (citation omitted). Assuming Myers made this showing, the burden shifted to BMO to demonstrate an inability to comply with the order. *Id.* We review

the court's contempt finding and imposition of sanctions for an abuse of discretion, accepting the court's factual findings unless clearly erroneous. *Stoddard*, 224 Ariz. at 154–55, ¶ 9, 228 P.3d at 146–47.

¶ 7 The reinstated TRO restrained BMO as follows:

IT IS HEREBY ORDERED that a temporary restraining order be issued immediately, restraining Defendants, their attorneys, trustees, officers, agents, servants, employees and any and all other persons in active concert or participation with them, from conducting a trustee's sale of Plaintiff's property located in Sedona, Arizona bearing parcel Nos. 408–31–067, 408–31–067A, 408–31–067B, and 408–31–067C (the "Property").

The trial court ruled that BMO willfully violated this order by issuing new notices of trustee's sales. We disagree. BMO did not violate the directive to refrain from conducting a trustee's sale because it did *not*, in fact, conduct a trustee's sale. Rather, BMO issued new notices reflecting its intention to conduct new sales; but the reinstated TRO did not prohibit BMO from issuing new notices. Thus, BMO did not violate a "specific and definite" court order. *Fed. Trade Comm'n*, 179 F.3d at 1239; *see also* Ariz. R. Civ. P. 65(h) ("[E]very restraining order ... shall be specific in terms. It shall describe in reasonable detail ... the act or acts sought to be restrained....").

¶ 8 Myers nevertheless argues BMO acted in contempt of the reinstated TRO by making it clear it intended to proceed with the newly noticed trustee's sales despite the order. We agree with Myers the reinstated TRO prohibited all trustee's sales

---

1. BMO initially filed a notice of appeal from the contempt orders, but we dismissed it without prejudice to filing a special action petition.

2. The supreme court has broken "contempt" into four categories, criminal, civil, direct, and indirect, and held that a contempt finding will involve a combination of categories. *Ong Hing v. Thurston*, 101 Ariz. 92, 98, 416 P.2d 416, 422 (1966) (explaining each category). The parties here agree the trial court found BMO in civil contempt. Because the category of contempt imposed does not affect our resolution of this

special action, we accept that description without deciding its accuracy or determining whether the contempt was direct or indirect.

3. Section 12–864 provides in pertinent part that "[C]ontempts committed by failure to obey a lawful writ, process, order, judgment of the court ... may be punished in conformity to the practice and usage of the common law."

Absent material revision after the date of the events at issue, we cite a statute's current version.

and not only ones that were the subject of the original notices of sale. We also agree BMO's attorney expressed an intention to proceed with the sales regardless of the TRO based on his view the TRO did not apply to sales that were newly noticed. But an expressed intention to violate a court order is not a violation of that order. Although no Arizona appellate court has addressed the matter, other courts have refused to recognize a doctrine of "anticipatory contempt."[4] Two rationales underlie these cases. First, because intentions can change before an actual violation of an order, whether a party acts in contempt of an order is not ripe for review until the order is actually violated.[5] *See, e.g., Kirk v. Kirk,* 172 Ohio App.3d 404, 875 N.E.2d 125, 128, ¶ 5 (2007). Second, permitting the court to find contempt based solely on a party's expressed intention to defy an order in the future is unnecessary because contempt proceedings at the time of an actual violation would suffice to achieve the proper ends of a contempt judgment. Consequently, to permit anticipatory contempt orders would violate the fundamental principle of contempt that "a court must exercise only the 'least possible power adequate to the end proposed.'" *United States v. Johnson,* 736 F.2d 358, 362 (1984) (quoting *Shillitani v. United States,* 384 U.S. 364, 371, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)).

¶ 9 We agree with the holdings in these cases. Unless and until BMO conducted the trustee's sales while the reinstated TRO remained in effect, it was not in contempt of that order, and the trial court therefore erred by finding BMO in contempt and sanctioning it for issuing notices of its intention to conduct trustee's sales in the future.[6]

## CONCLUSION

¶ 10 For the foregoing reasons, we accept jurisdiction over the special action petition and hold the trial court erred by finding BMO in contempt of the reinstated TRO for expressing an intention to violate that order in the future. We grant relief to BMO by vacating the trial court's contempt orders entered August 16, 2011 and September 14, 2011. In the exercise of our discretion, we decline BMO's request for attorneys' fees pursuant to A.R.S. § 12–341.01.

CONCURRING: MAURICE PORTLEY, Presiding Judge and ANDREW W. GOULD, Judge.

---

4. *See, e.g., In re McConnell,* 370 U.S. 230, 236, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962) (reversing contempt finding against attorney who had expressed intention to ignore court's refusal to allow offer of proof, reasoning "we cannot agree that a mere statement by a lawyer of his intention . . . can be punished under the limited powers of summary contempt."); *United States v. Bryan,* 339 U.S. 323, 341, 70 S.Ct. 724, 94 L.Ed. 884 (1950) ("There is, in our jurisprudence, no doctrine of 'anticipatory contempt.' "); *United States v. Johnson,* 736 F.2d 358, 365 (6th Cir. 1984) (holding trial court could not hold witness in contempt for expressing intention to disobey order to testify; an actual refusal at time of trial is necessary); *In re Contempt of Dougherty,* 429 Mich. 81, 413 N.W.2d 392, 402 (1987) (concluding defendants' professed intent to violate order enjoining trespass cannot be basis for contempt order).

5. In this case, for example, BMO might have canceled the notices or continued the sale dates until it could determine whether this court would dismiss the appeal as moot and the mandate issued.

6. Myers argues that had the court refrained from holding BMO in contempt of the reinstated TRO, BMO would have been granted free rein to conduct the new trustee's sales and suffer the consequences of contempt later, making the reinstated TRO essentially meaningless. We do not discern such dire consequences. At Myers' request, the trial court clarified that the reinstated TRO prohibited all trustee's sales, including the ones newly noticed by BMO. Nothing in the record suggests BMO would have conducted the sales in violation of that order.