NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANN-CATRINE LILLQVIST, *Petitioner*,

*v.*

THE HONORABLE GEOFFREY FISH, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge*,

ALEXANDER F. BRIGHAM, *Real Party in Interest*.

No. 1 CA-SA 17-0270
FILED 12-21-2017

Petition for Special Action from the Superior Court in Maricopa County
No. FC 2013-006119
The Honorable Geoffrey H. Fish, Judge

**JURISDICTION ACCEPTED IN PART AND DECLINED IN PART;
RELIEF GRANTED IN PART**

COUNSEL

Dickinson Wright PLLC, Phoenix
By Leonce A. Richard, III
*Counsel for Petitioner*

The Cavanagh Law Firm, P.A., Phoenix
By Christina S. Hamilton
*Counsel for Real Party in Interest*

_____

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Peter B. Swann joined.

_____

**W I N T H R O P**, Judge:

¶1        Petitioner, Ann-Catrine Lillqvist ("Wife"), filed a petition for special action challenging the family court's order of contempt for her failure to comply with the Property Settlement Agreement ("PSA") by not signing over to Alexander Brigham ("Husband") a disputed annuity and a quit claim deed of the Maine residence.  Wife also challenged the court's award of attorneys' fees to Husband.  For the following reasons, we accept jurisdiction concerning the contempt finding of the annuity, but deny relief; accept jurisdiction concerning the contempt finding for the Maine residence and grant relief; and decline jurisdiction concerning the issue of attorneys' fees.

## FACTS AND PROCEDURAL HISTORY

¶2        In September 2014, the parties entered a Rule 69 settlement agreement, evidenced by a PSA, and enlisted their former attorney to help allocate and move the marital assets per that agreement.  The trial court entered a decree of dissolution of a non-covenant marriage between the parties' in January 2015.  In its decree, the court found: "[t]he parties' Property Settlement Agreement dated the 9th day of December 2014, is approved and incorporated herein . . . but is specifically not merged herein and shall survive as an independent contract between the parties.  The parties are ordered to comply with the terms of the Property Settlement Agreement as the Order of this Court."

¶3        The PSA provided that Husband "assign, grant, convey and transfer" specific, delineated property to Wife, and that Wife "assign, grant, convey and transfer" all "property not allocated to Wife" to Husband. Under Husband's award of property, it listed the assets he was to receive, which included the Maine residence.

¶4        On May 5, 2017, Husband filed a petition for enforcement with the family court alleging he was entitled to the Advisor's Edge

Variable Annuity (the "Annuity")[1] and Maine residence pursuant to the PSA. Wife moved for summary judgment, arguing the Annuity was an omitted asset, and thus, subject to equal division. Husband cross-moved for summary judgment.

¶5         The family court held an evidentiary hearing on August 23, 2017. At the hearing, the parties' former attorney and asset-manager throughout the proceedings, testified that a share file system was established for the parties' to securely view their financial information. The asset-management attorney also created a PowerPoint to show how the assets were to be distributed. The PowerPoint "roadmap" showed a balance sheet, which listed the division of the tax-deferred assets: $16,834 to Wife and $671,105 to Husband. The division of the tax-deferred assets and the distribution of the property was approved by both parties. Neither the PSA nor the roadmap, detailing the distribution of assets, specifically referred to the Annuity. However, the asset-management attorney testified at length that it was evident from the description and calculation of the various assets that the Annuity was included in Husband's portion of tax-deferred assets.

¶6         As a part of the property distribution, and PSA, Wife was required to transfer to Husband any property she was not entitled to, which included the Annuity and Maine residence. Wife, however, refused to transfer the Annuity, and only signed over the Maine residence once the petition to enforce was filed. In Wife's defense, she testified that although she looked at the roadmap, she did not understand what was meant by tax-deferred assets, and did not know it included the Annuity.

¶7         The family court denied the motion and counter-motion for summary judgment, finding genuine issues of material fact existed. The court then found that although the Annuity was not specifically listed in the PSA, it was clear from the evidence, and the language of the PSA, that the Annuity was a part of Husband's property award.[2] The court further found Wife's testimony that she was confused about the Annuity not

---

[1]     Both Wife and the family court refer to this asset as the "Transamerica Annuity."

[2]     The court found the parties clearly contemplated that Husband would receive the Annuity based on the share file system and the total amount of tax-deferred assets, of which Wife was only to be awarded $16,834.

credible, at least in part because Wife was represented by highly experienced attorneys.

**¶8**         The court awarded the Annuity to Husband, and found Wife in contempt for failing to transfer the Annuity and sign the deed to the Maine residence. The court awarded Husband attorneys' fees incurred for Wife's failure to perform under the PSA by failing to timely sign the Maine residence deed, and ordered Wife to pay a portion of Husband's reasonable attorneys' fees and costs for the evidentiary hearing.

**¶9**         On October 25, 2017, Wife filed this petition for special action, arguing the court erred in holding her in contempt because the court improperly interpreted the parties' PSA. [3]

## JURISDICTION

**¶10**         Special action jurisdiction is available when there is no other equally plain, speedy or adequate remedy by appeal.[4] Ariz. R. Spec. Act. 1(a). "An order holding a party in contempt for refusing to obey a court order is not appealable and may only be reviewed through special action." *BMO Harris Bank Nat'l Ass'n v. Bluff*, 229 Ariz. 511, 513, ¶ 5 (App. 2012); *accord Stoddard v. Donahoe*, 224 Ariz. 152, 154, ¶ 7 (App. 2010).

## ANALYSIS

**¶11**     "We review [a] civil contempt finding . . . for an abuse of discretion." *Stoddard*, 224 Ariz. at 154, ¶ 9 (citing *Munari v. Hotham*, 217 Ariz. 599, 605, ¶ 25 (App. 2008)). "We do not reweigh the evidence and we accept the factual findings made by the superior court unless clearly erroneous." *Id.* at 154-55 (citing *Imperial Litho/Graphics v. M.J. Enters.*, 152 Ariz. 68, 72 (App. 1986)).

---

[3]         Wife also argues the court cannot hold her in contempt for violating the PSA because the PSA is not a court order. Wife's argument is not supported by the evidence. The court's decree of dissolution specifically ordered the parties to comply with the PSA "as the Order of this Court."

[4]         We decline jurisdiction of Wife's argument that the family court improperly awarded Husband's attorneys' fees because this argument is best brought as an appeal, not a special action. Regardless, Wife's request is premature. Husband submitted his request for attorneys' fees, and as of the time of his special action response, is awaiting a decision from the court.

*I.* *Annuity*

**¶12** At the evidentiary hearing, the asset-management attorney testified that both parties had access to a share file system. This system allowed the parties to view all assets subject to distribution. The parties further received a PowerPoint roadmap, which included calculations for the tax-deferred assets, detailing how the assets would be allocated and distributed. Although the Annuity was not specifically mentioned in the PSA or roadmap, the family court found it was readily discoverable through the share file system, and could be further identified by looking at the amounts under tax-deferred assets. Wife confirmed she received the roadmap, and only after her approval were the assets distributed. Wife now argues she was unaware of the Annuity or its allocation during the distribution process. The family court, however, was in the best position to determine the quality of the evidence and the parties' credibility on this issue, and we see no abuse of the court's discretion in this regard.

**¶13** Although the court could have simply ordered Wife to comply with the PSA after finding the PSA awarded the Annuity to Husband, it did not do so, and its finding is supported by reasonable evidence. We cannot say, on this record, that the court abused its discretion in holding Wife in civil contempt. [5]

*II.* *Maine Residence*

**¶14** Wife argues she cannot be found in contempt regarding the Maine residence because she signed over the residence to Husband. We agree.

**¶15** The "purpose of finding a person in civil contempt is to coerce that person to do or refrain from doing some act." *Korman v. Strick*, 133 Ariz. 471, 474 (1982). Thus, "a civil contemnor is always purged of the civil contempt and coercive force when he or she complies with the court's order." *Id.* Although Wife did not sign over the Maine residence until the

---

[5] The court does not specify whether it found Wife in civil or criminal contempt. We assume, however, that Wife was found in civil contempt. *See Ong Hing v. Thurston*, 101 Ariz. 92, 98 (1966) ("criminal contempt is the commission of a disrespectful act directed at the court itself which obstructs justice [and] civil contempt is the disobeyance of a court order directing an act for the benefit or advantage of the opposing party" (citing *Van Dyke v. Superior Court of Gila Cty.*, 24 Ariz. 508, 524 (1922))).

petition to enforce was filed, she did sign it at some point before the hearing. Accordingly, Wife could not be found in contempt because she had already complied with the court's order. Thus, the court abused its discretion in finding Wife in contempt for failing to sign over the Maine residence before the hearing.

**CONCLUSION**

**¶16** For the foregoing reasons, we accept jurisdiction concerning the contempt finding of the annuity, but deny relief; accept jurisdiction concerning the contempt finding for the Maine residence and grant relief; and decline jurisdiction concerning the issue of attorneys' fees.



AMY M. WOOD • Clerk of the Court
FILED: AA